E-FILED
Friday, 29 May, 2026  02:01:38 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| BAILEE SHEPHERD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-04195-SLD-RLH |
| | ) | |
| BRIDGEWAY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

In this case, Plaintiff Bailee Shepherd alleges that Defendant Bridgeway, Inc.

("Bridgeway") violated several employment laws because of her sex and pregnancy status.

Before the Court is Bridgeway's motion to dismiss Shepherd's amended complaint, ECF No.

11.[1]  For the reasons that follow, Bridgeway's motion is DENIED.

**BACKGROUND**[2]

**I.       Facts of the Case**

From on or about March 9, 2020, until May 1, 2025, Shepherd worked for Bridgeway as

a Director of Behavior Health Services.  She claims Bridgeway constructively discharged her

because of her sex (female) and pregnancy.  In July 2024, Shepherd informed her supervisor,

Vicky, that she was pregnant.  After doing so, she experienced a noticeable change in how

colleagues treated her and the tone they used with her.  Shepherd's professional relationship with

Vicky became strained, and Shepherd felt isolated and scrutinized.  She began encountering

opposition to accommodations that were not issues prior to disclosing her pregnancy.  For

---

[1] Bridgeway's motion to dismiss Shepherd's original complaint, ECF No. 8, is also pending, but is MOOT since
Shepherd filed an amended complaint. *See* Civil LR 7.1(E).

[2] When ruling on a motion to dismiss, a court must take all of the complaint's well-pleaded allegations as true and
view them in the light most favorable to the plaintiff. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930,
934 (7th Cir. 2012).  Unless otherwise noted, the facts set forth are taken from the amended complaint.

instance, before Shepherd disclosed her pregnancy in July 2024, she occasionally worked remotely without issue. On January 30, 2025, when Shepherd requested to work from home, Vicky replied that "I assume you already are since it's after 8." Am. Compl. ¶ 23 (quotation marks omitted). Shepherd was actually at work, but she was struggling with pregnancy-related symptoms and so wanted to return home. Because Shepherd was "the only person from management physically in the office," her request was denied without any further engagement. *Id.* ¶ 25 (quotation marks omitted). This was never an issue raised by prior work from home requests. As a result of this new response to accommodation requests, Shepherd did not feel comfortable asking to work remotely. Instead, she began to use Paid Leave for All Workers ("PLAW") or paid time off ("PTO"). Similarly, when Shepherd requested time off for an ultrasound for her pregnancy, Bridgeway denied her request. Shepherd went to the Human Resources ("HR") office to discuss that she needed this time off to attend her appointment. HR did not address the underlying issue, telling her to use PLAW instead of PTO because PLAW cannot be denied.

Shepherd's pregnancy was a high risk one—she had pre-eclampsia and high blood pressure. As a result, she received a doctor's note requiring her to work from home. Initially, Bridgeway approved this remote work; however, Vicky and the vice president later met with Shepherd and informed her that she would be placed on intermittent FMLA leave instead "due to not feeling like [Shepherd] could work 40 hours remotely and that if [she] didn't have any work to do, [she] would have to use FMLA leave." *Id.* ¶ 36 (quotation marks omitted). After this meeting, Shepherd contacted HR, who clarified that Shepherd should only use FMLA if she had something that prevented her from working, such as an illness or appointment.

2

Shepherd grew concerned about her well-being and decided to speak with Dan from HR and "engage in protected activity." *Id.* ¶ 41.  He told her that, because of the work environment's impact on her mental health, it was understandable if she chose to search for new jobs.  To Shepherd, this did not feel supportive, nor did it feel like a meaningful engagement with her concerns.  Rather, it felt like pressure to leave the company and compounded her experience of pregnancy-based discrimination.

Shortly before Shepherd's maternity leave began in February 2025, she handed Vicky her leave of absence form.  Vicky said she "didn't even want this on [her] radar," tossing it back to Shepherd.  *Id.* ¶ 46 (alteration in original) (quotation marks omitted).  Vicky never signed the form, and Shepherd ultimately had to get a signature from a vice president.  Vicky also repeatedly made "inappropriate and discriminatory remarks to and about other pregnant employees." *Id.* ¶ 55.  For instance, when a different employee disclosed her pregnancy to Vicky, Vicky asked "Do you not know what birth control is?" and repeatedly made statements such as "Now I have to take over her workload" and "She needs to learn how to take her birth control." *Id.* ¶ 56 (quotation marks omitted).  The work environment was also generally hostile toward pregnant employees.

For the duration of her employment, Shepherd met or exceeded Bridgeway's performance expectations.  Despite her high performance and having no disciplinary issues, she did not get a raise in January 2025.  She was told it was because she received a raise in July 2024 (before disclosing her pregnancy); however, she learned that several colleagues received raises in both July 2024 and January 2025.  Around May 1, 2025, while on maternity leave, Shepherd resigned.

II.    **Procedural History**

Shepherd filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 17, 2025.  Discrimination Charge, Am. Compl. Ex. A, ECF No. 10-1.  She received a notice of her right to sue from the EEOC, *see* EEOC Not. Right to Sue, Am. Compl. Ex. B, ECF No. 10-2, and a notice of dismissal from the Illinois Department of Human Rights ("IDHR"), *see* Not. Dismissal, Am. Compl. Ex. C, ECF No. 10-3 at 3.  The IDHR's notice of dismissal both dismissed and closed Shepherd's charge because it "ha[d] not received a timely request to review the EEOC determination of no cause." *Id.*  Shepherd then timely filed her initial complaint in this case on October 29, 2025.  Compl., ECF No. 1.  Bridgeway filed its first motion to dismiss on December 30, 2025.  Dec. 30, 2025 Mot. Dismiss, ECF No. 8.  In response, Shepherd filed an amended complaint, which is the operative complaint in this case.  She brings six counts: sex-based discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17 (Count I); sex-based harassment under Title VII (Count II); retaliation under Title VII (Count III); failure to accommodate under the Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. §§ 2000gg–2000gg-6 (Count IV); retaliation under the PWFA (Count V); and sex-based discrimination under the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101–5/10-105 (Count VI).  Am. Compl. ¶¶ 64–116.  Bridgeway filed a motion to dismiss for failure to state a claim, seeking dismissal of counts II, III, V, and VI.  *See generally* Mot. Dismiss Am. Compl.

## DISCUSSION

I.    **Legal Standard**

In reviewing a motion to dismiss, a court must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *Indep. Tr. Corp. v.*

*Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012). A court will dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In determining whether such a claim has been stated, a court should consider the complaint's well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The allegations must "raise a right to relief above the speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quotation marks omitted). Put another way, a "plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

"[A] complaint need not anticipate and overcome affirmative defenses," *The Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009), such as exhaustion of administrative remedies, *Salas v. Wis. Dep't of Corrs.*, 493 F.3d 913, 921 (7th Cir. 2007). However, when the complaint "set[s] forth everything necessary to satisfy the affirmative defense[]," it may be dismissed at the pleading stage. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). A court may also consider additional materials—documents referred to in and critical to the complaint and information subject to judicial notice—when ruling on a failure-to-exhaust defense without converting a motion to dismiss to one for summary judgment. *See, e.g.*, *Duhart v. U.S. Postal Serv.*, No. 17-CV-192, 2017 WL 2483803, at *2 (E.D. Wis. June 8, 2017) (considering two documents the defendant attached to its motion to dismiss, the plaintiff's EEO complaint and a postmarked envelope). Dismissal on the basis of an affirmative defense may be more properly accomplished on a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013). But the same standard applies to Rule 12(c) motions and Rule 12(b)(6) motions, so the

distinction is inconsequential. *See Walczak v. Chi. Bd. of Educ.*, 739 F.3d 1013, 1016 n.2 (7th Cir. 2014).

## II.   Analysis

Shepherd brings claims under Title VII, the IHRA, and the PWFA. Title VII makes it unlawful for an employer to discriminate on the basis of sex. 42 U.S.C. § 2000e-2(a). The IHRA similarly prohibits employers from discriminating on the basis of sex and pregnancy. 775 ILCS 5/2-102(A); 775 ILCS 5/1-103(Q). The PWFA expands workplace protections for pregnant employees. *See* 42 U.S.C. § 2000gg-1; *see Keiper v. CNN Am., Inc.*, No. 24-CV-875, 2024 WL 5119353, at *2 (E.D. Wis. Dec. 16, 2024) ("Congress intended the PWFA to expand protections for pregnant employees and modeled it largely off the Americans with Disabilities Act (ADA).").

### a.   Count II – Sex-Based Harassment Under Title VII

Count II of the amended complaint alleges sex-based harassment under Title VII.[3] Am. Compl. ¶¶ 72–80. Bridgeway argues that the count must be dismissed because Shepherd has "failed to state a plausible claim for hostile work environment sex harassment." Mem. Supp. Mot. Dismiss 6–8, ECF No. 12. "Title VII's general prohibition against . . . discrimination by employers includes a prohibition against creating a 'hostile or abusive work environment.'" *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014). "[W]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

---

[3] "Harassment . . . is a broad term which encompasses all forms of conduct that unreasonably interfere with an individual's work performance or create an intimidating, hostile, or offensive working environment." *Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1033 (7th Cir. 2003) (quotation marks omitted). For consistency, the Court will refer to this as a sex-based harassment claim, but may discuss cases which use "hostile work environment" language.

6

environment," Title VII is violated.  *Id.* (quotation marks omitted); *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 834 (7th Cir. 2015).  Title VII harassment claims are "composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'"  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)).

To prevail on a sex-based harassment claim, a plaintiff must show that "(1) she endured unwelcome sexual harassment; (2) she was harassed because of her sex; (3) the harassment was so severe or pervasive that it altered the conditions of employment and created a hostile work environment; and (4) there is a basis for employer liability."  *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 928 (7th Cir. 2017).  Bridgeway argues that Shepherd failed to allege facts for each of the four required elements of her claim because her allegations are "vague and conclusory."  Mem. Supp. Mot. Dismiss 6.  This argument fails—Shepherd's amended complaint puts Bridgeway on notice of the claim against it and states a plausible claim for sex-based harassment.  *See, e.g.*, *Tamayo*, 526 F.3d at 1085 (finding a plaintiff's sex-based Title VII allegations sufficient to survive a motion to dismiss when they gave the employer "sufficient notice to enable [it] to begin to investigate and prepare a defense"); *Huri*, 804 F.3d at 834 ("Defendants have fair notice of [the plaintiff's] claims and the grounds upon which those claims rest, and the details in her . . . complaint present a story that holds together." (quotation marks omitted)); *see Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1338 (7th Cir. 2024) ("All the complaint need do is state a grievance.  Details and proofs come later.").

Shepherd sufficiently alleges that she endured unwelcome harassment and that the harassment was based on pregnancy, which means based on sex under Title VII.  *See* 42 U.S.C. § 2000e(k).  Shepherd alleges that Vicky's treatment of and attitude towards her changed

immediately and significantly upon learning of Shepherd's pregnancy.  Am. Compl. ¶ 20.  Her

relationship with Vicky became strained, and Shepherd felt "isolated and scrutinized" after

disclosing her pregnancy.  *Id.* ¶ 21.  Shepherd alleges that treatment of her work from home

requests changed significantly once she disclosed her pregnancy.  Prior to the disclosure, she

could work remotely without issue, *id.* ¶ 19, even if she was the only person in the office, *id.* ¶

26.  After the disclosure, Shepherd received negative comments and her requests were rejected

because she was the only person in the office.  *Id.* ¶¶ 22–25.  Her requests for time off for

pregnancy-related healthcare were also denied, *id.* ¶¶ 28–29, and when she went to HR to discuss

this, *id.* ¶ 30, she was told to use PLAW to avoid needing supervisory approval, *id.* ¶¶ 27, 30–31.

Shepherd alleges that "[t]he change in [her] ability to receive accommodations after she

disclosed her pregnancy to [Bridgeway] began a pattern of discriminatory treatment and a hostile

work environment."  *Id.* ¶ 32.  When Shepherd tried to give Vicky her leave of absence form for

her maternity leave, "Vicky tossed it back . . . stating that she 'didn't even want this on [her]

radar' and to put it in her mailbox."  *Id.* ¶¶ 45–46 (alteration in original).  Vicky never completed

the form—a vice president eventually signed it.  *Id.* ¶ 47.  Shepherd also alleges that Vicky

"made inappropriate discriminatory remarks to and about other pregnant employees."  *Id.* ¶ 55.

It is a reasonable inference that Plaintiff heard these comments, *see id.* ¶¶ 55–57, such that they

can also be considered harassing toward her.  Moreover, as Shepherd alleges that her supervisor

harassed her, *id.* ¶ 20, there is a basis for employer liability, *see, e.g.*, *Huri*, 804 F.3d at 834.

Bridgeway argues that "[t]he facts alleged by [Shepherd] are vague and conclusory,"

Mem. Supp. Mot. Dismiss 6.  But immediately thereafter, Bridgeway discusses several discrete

alleged events.  *See, e.g.*, *id.* at 7 ("[Shepherd] alleges that on January 30, 2025, she was at the

office and requested to work from home, and that her supervisor denied the request because [she]

was the only person from management physically in the office."). While true that Shepherd makes some more vague and conclusory allegations—like that she felt isolated and scrutinized, and that her relationship with Vicky became strained, Am. Compl. ¶¶ 21, 40—she includes specific allegations that support those conclusions.

Bridgeway also argues that Shepherd's allegations "do not set forth conduct severe and pervasive enough to form the basis for a claim of sexual harassment." Mem. Supp. Mot. Dismiss 7. However, Shepherd alleges that Vicky's repeated comments to and about pregnant employees "contributed to a culture of disrespect and intolerance toward pregnant employees." Am. Compl. ¶ 57. She also alleges that she "felt she had no other option but to resign due to the hostile and discriminatory environment she faced after disclosing her pregnancy." Id. ¶ 53. She further describes the work environment as generally hostile to pregnant employees. Id. ¶ 54. These allegations along with the specific incidents Shepherd alleges, described above, plausibly show a pattern of severe or pervasive harassment actionable under Title VII. See Huri, 804 F.3d at 834 (finding that "it is premature at the pleadings stage to conclude just how abusive [the] work environment was," rather, "[i]t is enough to say that it is plausible that the [alleged conduct] could plausibly be abusive").

In arguing that Shepherd's allegations do not show severe or pervasive conduct, Bridgeway leaves out key allegations about Vicky's comments to and about other pregnant employees and exclusively discusses Shepherd's allegations in isolation rather than as a whole. See Mem. Supp. Mot. Dismiss 6–8. As Shepherd points out, see Resp. 5, ECF No. 13, a sex-based harassment claim is reviewed holistically, not in isolation, see Morgan, 536 U.S. at 115 ("[Title VII harassment] claims are different in kind from discrete acts. Their very nature involves repeated conduct."). As such, arguing that any one allegation may not be independently

9

sufficient to establish a sex-based harassment claim does not mean Shepherd has failed to sufficiently allege facts which, when taken as a whole, may plausibly support a finding of sex-based harassment. For these reasons, Bridgeway's motion to dismiss Count II of Shepherd's amended complaint is DENIED.

### b. Counts III & V – Retaliation Under Title VII & PWFA[4]

Counts III and V of the amended complaint allege retaliation under Title VII and the PWFA. Am. Compl. ¶¶ 81–89, 100–08. Bridgeway argues that the counts must be dismissed because the facts alleged are insufficient to support the alleged retaliatory action—constructive discharge. Mem. Supp. Mot. Dismiss. 8–10. To state a claim for retaliation under Title VII, a plaintiff must "allege that she engaged in statutorily protected activity and was subjected to adverse employment action as a result." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013). The activity must be specifically identified. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781 (7th Cir. 2007).

Though Bridgeway does not challenge that Shepherd engaged in protected activity, the Court finds it prudent to address. Shepherd alleges that she engaged in a specifically-identified protected activity—she disclosed her pregnancy. *See, e.g.*, Am. Compl. ¶¶ 83–84, 102–103. While disclosing pregnancy is protected by the Title VII and PWFA, disclosure itself is not a

---

[4] "Where the language of the PWFA mirrors that of the ADA or Title VII, the Court applies the legal standards governing ADA and Title VII claims to Plaintiff['s] corresponding PWFA claims, as the PWFA, ADA, and Title VII all share the same purpose: eliminating workplace discrimination." *U.S. E.E.O.C. v. Sec. Assurance Mgmt., Inc.*, No. 25-00181 (RC), 2025 WL 2911781, at *4 n.4 (D.D.C. Oct. 14, 2025) (citing *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85–86 (2006)). Title VII makes it unlawful "[f]or an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The PWFA requires that "[n]o person shall discriminate against any employee because such employee has opposed any act or practice made unlawful by this chapter or because such employee made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 2000gg-2(f)(1). The PWFA's language plainly mirrors that of Title VII, so the Court will apply the Title VII retaliation standards to both, though it acknowledges that the activities protected under each law differ.

protected activity to which the retaliation provisions of Title VII or the PWFA apply.  Instead, retaliation claims protect people "from retaliation for complaining about the types of discrimination [Title VII and the PWFA] prohibit[]." *Miller v. Am. Fam. Mut. Ins. Co.*, 203 F.3d 997, 1007 (7th Cir. 2000).  "An employee, of course, need not use the words 'pregnancy discrimination' to bring her speech within . . . retaliation protections.  But she has to at least say something to indicate her pregnancy is an issue." *Id.* at 1007–08 (citation omitted).  Elsewhere in her amended complaint, Shepherd alleges that she "became concerned about her well-being and decided to *engage in protected activity* and approached Defendant's HR to speak with Dan." Am. Compl. ¶ 41 (emphasis added).  Although Shepherd does not provide details about what exactly was discussed in this meeting, when construing the facts in a light most favorable to Shepherd, she has plausibly alleged that the meeting included an indication that her pregnancy was an issue.  She states that Dan told her "he would understand if she needed to look for other employment because of the impact the environment was having on [her] mental health." *Id.* ¶ 42.  She "interpreted this as pressure to leave the company, rather than an offer of support— further demonstrating the discriminatory treatment towards [Shepherd] as a pregnant female." *Id.* ¶ 44.  Because Shepherd describes the impact of this meeting as compounding the discriminatory treatment she experienced due to her pregnancy, it is reasonable to infer that the meeting included complaints of her treatment since disclosing her pregnancy.  It is also reasonable to infer that the meeting included complaints about her use of leave because of her pregnancy—which would indicate a complaint about unlawful activity under the PWFA specifically—since she had spoken to HR about being required to use FMLA leave when working from home due to pregnancy complications.  *See id.* ¶¶ 36–39.

11

Shepherd's complaint further alleges that she "suffered an adverse employment action in retaliation for engaging in protected activity."  Am. Compl. ¶ 106.  It is true that the complaint specifically identifies Bridgeway's termination of Shepherd's employment as the retaliatory action, *id.* ¶ 105, but "[a] complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error," *Rabé v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011).  As Shepherd argues in response to the motion to dismiss, Resp. 7, she does not exclusively allege constructive discharge; she also alleges several other adverse actions and facts to support them, including not receiving a raise.  *See* Am. Compl. ¶ 62.  This is sufficient.  Because Shepherd alleges several adverse actions and so the success of her claim does not hinge solely on constructive discharge, the Court need not specifically address Bridgeway's argument that Shepherd insufficiently alleged constructive discharge.  For these reasons, Bridgeway's motion to dismiss counts III and V fails.

### c.  Count VI - Sex-Based Discrimination Under the IHRA[5]

Count VI of the amended complaint alleges sex-based discrimination under the IHRA.  Am. Compl. ¶¶ 109–16.  Bridgeway does not challenge that Shepherd has sufficiently alleged the necessary elements to survive a motion to dismiss.  *See* Mem. Supp. Mot. Dismiss 10–12; *Spencer v. Austin*, No. 19 C 7404, 2021 WL 4448723, at *5 (N.D. Ill. Sept. 28, 2021) (outlining pleading stage requirements for sex-based discrimination claims under the IHRA).  Instead, it argues that count VI must be dismissed because Shepherd does not allege that she timely forwarded the EEOC's no cause determination to the IDHR as Bridgeway asserts she must.  Mem. Supp. Mot. Dismiss 10.

---

[5] Courts can apply the same standards in analyzing IHRA and Title VII claims.  *See, e.g.*, *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 547 (7th Cir. 2017).

Bridgeway is correct that courts regularly dismiss claims brought under the IHRA when the complaint fails to plausibly allege that the plaintiff timely forwarded the EEOC's determination to the IDHR.  *See, e.g.*, *Butler v. Advance Trading, Inc.*, No. 23-cv-1445-JES, 2024 WL 2832786, at *2–3 (C.D. Ill. June 4, 2024); *Gawlik v. Chi. Trans. Auth.*, No. 23 C 4041, 2024 WL 4132741, at **3–4 (N.D. Ill. Sept. 10, 2024); *Donald v. City of Chicago*, 539 F. Supp. 3d 912, 920–21 (N.D. Ill. 2021).  These cases rely on 775 ILCS 5/7A-102(A-1)(1)(iv); however, Shepherd's IDRH notice of dismissal cites 775 ILCS 5/7A-102(A-1)(3)(a) as the basis for its dismissal and closure of her case.  Not. Dismissal.  This subsection states:

> If the complainant does not file a written request with the [IDHR] to review the EEOC's determination within 35 days after receipt of the [IDHR's] notice, the [IDHR] shall notify the complainant, within 10 business days after the expiration of the 35-day period, that the decision of the EEOC has been adopted by the [IDHR] as a dismissal for lack of substantial evidence and that the complainant has the right, within 90 days after receipt of the [IDHR's] notice, to commence a civil action in the appropriate . . . court . . . .

775 ILCS 5/7A-102(A-1)(3)(a).  That the IDHR applied this subsection suggests that the IDHR was timely notified of the EEOC's determination by Shepherd.  *Id.* 5/7A-102(A-1)(3) ("[I]f the Department is timely notified of the EEOC's determination by the complainant, the Department shall notify the parties, within 10 business days after receipt of the EEOC's determination, that the Department will adopt the EEOC's determination . . . unless the complainant requests in writing within 35 days . . . that the Department review the EEOC's determination.").  As such, Bridgeway's argument that Shepherd did not fulfill all statutory requirements fails and its motion to dismiss this count is denied.

## CONCLUSION

Accordingly, Bridgeway's first motion to dismiss, ECF No. 8, is MOOT because Shepherd filed an amended complaint.  Bridgeway's second motion to dismiss, ECF No. 11, is

DENIED.  Bridgeway is DIRECTED to file an answer to the Amended Complaint, ECF No. 10, within fourteen days.  *See* Fed. R. Civ. P. 12(a)(4)(A).

Entered this 29th day of May, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE
